UNITED STATES of America ex rel. Albert RAYMOND

v.

Alfred T. RUNDLE, Superintendent, State Correctional Institution, Graterford, Pennsylvania.

Civ. A. No. 43741.

United States District Court
E. D. Pennsylvania.

Nov. 8, 1967.

Melvine M. Dildine, Defender Assn. of Philadelphia, Pa., for plaintiff.

Welsh S. White, Asst. Dist. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JOHN W. LORD, Jr., District Judge.

Pursuant to an order of this Court dated the 9th of October, 1967, a hearing was held in the United States Court House in Philadelphia, Pennsylvania on October 31, 1967[1] in which plaintiff, a prisoner under sentence of death sought to enjoin respondent from (a) denying him the use of his personal funds held in a prison savings account to purchase legal materials, copies of his indictment, etc., (b) denying him his statutorily-guaranteed exercise privileges, and (c) curtailing his visitation rights.

The issue presented common to all three allegations is whether the prison regulations and/or policies complained of cause plaintiff to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws * * *." 42 U.S.C.A. § 1983.

It has been held by this Court that Federal courts will not interfere with *uniformly* applied prison regulations designed to achieve discipline indispensable to orderly operation of state penal institutions. United States ex rel. Wakeley v. Commonwealth of Pennsylvania, 247 F.Supp. 7 (E.D.Pa.1965). It was recognized in that case that the exercise of many of our rights long freely enjoyed by non-prisoners may be abridged in a prison environment when such exercise would pose a threat to internal discipline. But it was also significantly noted that while discipline is essential and certain rights might be curtailed in order to achieve it, the circumscription must always reasonably relate to the maintenance of prison discipline and never be rather an arbitrary and capricious disregard of human rights. *United States ex rel. Wakeley,* supra.

1. The hearing was originally ordered to be held on October 26, 1967. At the request of counsel for the plaintiff, it was continued until October 31, 1967.

■ Specifically, as to the visitation rights, it was brought out at the hearing that while plaintiff doesn't enjoy the same visitation rights as other prisoners, this is not peculiar only to him, but standard practice as regards all similarly situated capital inmates. The reason asserted for the rule is lack of personnel to supervise the visits to prisoners under sentence of death. It appears, and quite reasonably so, that capital prisoners necessarily, by their very nature, require more supervision than others.

■ Defendant asserted during the hearing that plaintiff was not being personally discriminated against in the time allotted to him for physical exercise. All inmates under sentence of death are afforded the same amount of exercise time, although less than that afforded to non-capital prisoners. Pennsylvania law provides for at least two hours a day of physical exercise *provided however it is safe and practical.* 61 P.S. § 101. Defendant has testified that it is not safe and practical to give maximum security prisoners, in which class all capital cases fall, two hours' recreation a day. The reason given is obvious and reasonable —security. Maximum security prisoners by definition pose a security problem to prison authorities. For this reason it is quite proper for their supervision to require an abridgement of some of their prison privileges which are usually afforded other inmates.

■ The final question concerns the denial to plaintiff of the use of his personal funds held in a prison savings account. As stated, plaintiff seeks to use these funds to purchase legal materials. It is standard practice in Pennsylvania state penal institutions to compensate prisoners for work done in the prison. In the case of capital prisoners the work which they are permitted to do is by necessity limited. For the most part it consists of janitorial and custodial services in and around their cells. Ten percent of these earnings are retained in a prison account which can only be withdrawn upon release from prison. This is to insure that the inmate upon his release will not be thrust penniless back into society. This is a reasonable rule. It does not deny a prisoner access to the courts. Still available to a prisoner is the remaining ninety percent of his wages; still available to him is the right to proceed in forma pauperis; still available to him is his right to have counsel prosecute his appeals without cost to him. The withholding of ten percent of a prisoner's funds no more unconstitutionally denies him access to the courts than if a percentage was withheld for social security purposes.

For all the foregoing reasons, it is the judgment of this Court that no injunction shall issue.