**Martin SOSTRE, Plaintiff,**

**v.**

**Nelson A. ROCKEFELLER, Paul D. McGinnis, Vincent Mancusi and Harold W. Follette, Defendants.**

**No. 68 Civ. 4058.**

United States District Court
S. D. New York.

Sept. 4, 1969.

---

**612**

Rabinowitz, Boudin & Standard, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendant.

## MEMORANDUM OPINION ON MOTION FOR PRELIMINARY INJUNCTION

MOTLEY, District Judge.

Plaintiff, an inmate at Green Haven Prison, moved for a preliminary injunction pursuant to Rule 65, Fed.R.Civ.P., to restrain defendants from keeping him in the punitive segregation unit of the prison on account of disciplinary charges made against him more than a year ago. Plaintiff alleged violations of his Fifth and Eighth Amendment constitutional rights. This court, in accordance with its previously filed findings of fact, has concluded that plaintiff is entitled to a preliminary injunction.

Plaintiff was placed in the segregation unit of the prison on June 25, 1968, because of disciplinary infractions. These infractions consisted of "threats and boasts that he would escape from the custody of correctional authorities; the presence of contraband material in his cell, consisting of two large pieces of emery board, adaptable for the fashioning of a key or lock picking tool; and disposing of his personal law books to other prisoners in violation of [prison] regulations;" as well as refusing to answer "questions put to him by prison authorities regarding his alleged recruitment of other prisoners for an organization suspected to be fomenting insurrection within [the] institution;" "engaging in unlawful correspondence by mail with unknown persons;" and "preparing legal papers on behalf of one Geraldine Robinson." (Warden's affidavit, p. 2-3).

Prisoners placed in segregation are required to participate in group counseling, but plaintiff has continually refused. The recommendation of the group counselor is given serious weight by the Warden in determining whether such prisoners may be returned to the general prison population. (Warden's affidavit, p. 3).

Plaintiff remained in the segregation unit until returned to the general population pursuant to the temporary restraining order of this court dated July 2, 1969.

The conditions in the segregation unit are such that prisoners in that unit: 1) have no work program of any kind; 2) do not have access to the library, motion pictures, television, or other recreational facilities available to other prisoners; 3) are permitted to bathe and shave once a week; 4) are not allowed to read newspapers or magazines; 5)

are confined to their cells 23 hours a day with only one hour of exercise time which is permitted only on condition that the prisoners undergo a thorough physical examination each day; 6) are awakened at half-hour intervals during the night by a guard who patrols the unit; and 7) are confined in a cell which has no natural daylight and which has an electric light which cannot be turned on or off from within the cell.

■ This court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. Those statutes entail no requirement that state remedies, administrative or judicial, be exhausted before seeking relief in this court. Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Wright v. McMann, 387 F.2d 519, 524 (2d Cir.1967).

■ A preliminary injunction is an extraordinary remedy which should be issued only upon a clear showing of probable success and possible irreparable injury to the moving party. Checker Motors Corporation v. Chrysler Corporation, 405 F.2d 319, 323 (2d Cir.1969); Dino de Laurentiis Cinematografica, S. p.A. v. D–150, Inc., 366 F.2d 373, 375 (2d Cir.1966). "However, 'the burden [of showing probable success]. is less where the balance of hardships tips decidedly toward the party requesting the temporary relief.' Dino de Laurentiis Cinematografica, S.p.A. v. D–150, Inc., *supra,* at 375." Checker Motors Corporation v. Chrysler Corporation, *supra,* at 323.

In the instant case, there has been no showing that release of the plaintiff from the segregation unit pending trial of this action will in any way undermine prison discipline or interfere in any respect with prison administration. The physical and psychological harm to the plaintiff, on the other hand, from continued confinement in the segregation unit, for which there can be no adequate monetary or other compensation, increases daily. Moreover, plaintiff has demonstrated a clear probability of success upon a final determination of the merits of this case.

■ The court finds plaintiff's Eighth Amendment claim sufficient in and of itself to warrant the issuance of a preliminary injunction without considering plaintiff's Fifth Amendment claim. Punishment totally disproportionate to the offenses charged has been held violative of the Eighth Amendment's prohibition against cruel and unusual punishment. Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910); Watson v. United States, 4 Cr.L.Rep. 3051 (No. 21,186) (D.C. Cir. Dec. 13, 1968)\*; Fulwood v. Clemmer, 206 F. Supp. 370 (D.C.D.C.1962); see also Gallego v. United States, 276 F.2d 914 (9th Cir.1960).

In *Weems,* the Supreme Court struck down a sentence of fifteen years imprisonment at "hard and painful labor" imposed under Philippine law for the offense of falsifying a public document to conceal a minor misuse of public funds. That sentence for such an offense was found "cruel in its excess of imprisonment" as well as "unusual in its character," 217 U.S. at 377, 30 S.Ct. at 553, for it is a "precept of justice that punishment for crime should be graduated and proportioned to the offense," 217 U.S. at 367, 30 S.Ct. at 549.

In speaking of *Weems,* the Court later said in Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 603 (1958):

"The Court recognized in that case that the words of the Amendment are not precise, and that their scope is not static. The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." 356 U.S. at 100–101, 78 S.Ct. at 598.

In *Trop,* four judges held that denationalization as a punishment is barred by the Eighth Amendment.

* Opinion vacated on April 18, 1969; case pending before the court en banc.

The District of Columbia Circuit in Watson v. United States, *supra,* in holding excessive a minimum ten-year sentence imposed for possession of drugs by a narcotics addict, looked to the idea of excessiveness in *Weems* and to that of evolving standards of decency in *Trop,* as well as to the fact that state legislatures are prohibited by the Eighth Amendment from making addiction a crime. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). As a result, the court explained that although some punishment of an addict's use may be permissible, any such punishment lies close to the line of unconstitutionality. "Where the eighth amendment barely permits *any* punishment of an offense, it may reasonably be thought to set relatively strict limits on the amount of punishment which may be imposed." 4 Cr.L.Rep. at 3054. The sentencing scheme in *Watson* was found to create an unconstitutional situation where a convicted murderer, kidnapper, arsonist, rapist, traitor, robber, or saboteur might receive a lighter sentence than is mandatorily imposed on an addict who possesses narcotics more than once. Id.

The imposition of punishment grossly disproportionate to the offense was also found violative of Eighth Amendment standards in Fulwood v. Clemmer, 206 F.Supp. 370 (D.C.D.C.1962), a case quite similar to this one. There, a Muslim prisoner had broken a prison rule, which forbade engaging in any demonstration or disturbance that would tend to breach the peace, by engaging in loud racial preaching within the hearing of white and Negro inmates on the prison recreation field. His punishment for this offense was segregation from the general inmate population in special control cells, much like the punitive segregation unit involved in the instant case, for more than two years. In finding this punishment unreasonably excessive, the court said:

"Despite the power of prison authorities to make proper rules and regulations for the government of prisoners, and to maintain discipline in the prison population, a prisoner may not be unreasonably punished for the infraction of a rule. A punishment out of proportion to the violation may bring it within the bar against unreasonable punishments," 206 F.Supp. at 379. See also Roberts v. Pegelow, 313 F.2d 548, 551 (4th Cir.1963); Gallego v. United States, 276 F.2d 914 (9th Cir.1960); United States ex rel. Raymond v. Rundle, 276 F.Supp. 637, 638 (E.D.Pa.1967); United States ex rel. Hancock v. Pate, 223 F.Supp. 202, 205 (N.D.Ill.1963); *cf.* Robinson v. California, 370 U.S. 660, 676, 82 S.Ct. 1417 (1962) (concurring opinion).

The court finds the situation in the instant case substantially parallel to that in Fulwood v. Clemmer. For that reason and for all the above reasons, plaintiff is entitled to the preliminary injunction issued by this court on August 1, 1969, restraining the defendant Follette from holding the plaintiff in punitive segregation, from segregating him from the general prison population, and from depriving him of the rights, privileges, and customs enjoyed by the general prison population until a trial and determination of this action can be had.