Jack Burton TUNNELL, Plaintiff,

v.

William B. ROBINSON et al.,
Defendants.

Civ. A. No. 79–361.

United States District Court,
W. D. Pennsylvania.

March 20, 1980.

---

Jack B. Tunnell, pro se.

Edward G. Biester, Jr., Atty. Gen. for the Commonwealth of Pennsylvania, Pittsburgh, Pa., for defendants.

1. 42 U.S.C. § 1983.

2. Bernett L. Johnson was a plaintiff originally with Tunnell, but he subsequently withdrew.

## SUPPLEMENTAL MEMORANDUM

ROSENBERG, District Judge.

The plaintiff in this case, Jack Burton Tunnell, incarcerated in the State Correctional Institution, Pittsburgh, Pennsylvania, filed a complaint under authority granted by the civil rights statute.[1] He charged the defendant, William B. Robinson and others associated with this Commonwealth's prison system, with violation of his civil rights in this institution.[2]

The plaintiff charged that while being a prisoner in the institution, the defendants were hampering his ability to transact financial matters with private banking facilities; that he was not permitted free access to his bank passbooks; that while other inmates were permitted to use the mail to obtain articles from catalogue sales stores, he was not so permitted to order from retailers catering to the black community; that rehabilitation programs for long-term inmates were inadequate; that inmates were not provided with periodic chest X-rays; that the institutional medical facilities were inadequate; that the dining facility was filthy; and, that the defendants were denying the inmates proper family visitation privileges.

The matter was referred to a United States Magistrate for an evidentiary hearing and submission of proposed findings of fact and a report and recommendation. Thereupon the Magistrate held an evidentiary hearing, heard witnesses, received testimony and made proposed findings of fact and conclusions of law and filed his report and recommendation and gave notice to the parties to file any objections they might have within ten (10) days from the date of his order.

The Magistrate in his Proposed Findings of Fact and Conclusions of Law, based upon the evidence which was presented before

Additionally, Tunnell asserts in the caption that this action is brought with all others similarly situated.

him, has dealt quite adequately with these charges. I now find that the record as a whole supports both the findings of fact and conclusions of law. Accordingly, I adopt these as the Findings of Fact and Conclusions of Law of this court.

Rather, it is the assumed, matter-of-right character of the charges as made by the plaintiff and the inadequacy of the evidence as presented to support them or lend weight of any significance as they may have offended the civil rights as charged, which I have also considered. Since there seems to be some misunderstanding of the rights of incarcerated persons, as shown by the number of petitions and complaints as filed for correction of internal matters in the places of custody, and because of the mistaken belief that federal courts can provide remedies for practically any matter, whatsoever, I deem it appropriate to clarify to some extent prisoner's rights to resort to federal courts and the limitations which govern federal courts. This, perhaps, will eliminate some futile efforts or hopes on the part of incarcerated prisoners and reduce the overburdened work load of the federal courts and their staffs.

The United States Constitution and federal laws are definitely concerned with the welfare of incarcerated people, as they are with unincarcerated people. However, to classify everything as being constitutionally protected is factually and legally erroneous. The Constitution and civil rights laws are not a catch-all, but, on the contrary, can be only in federal court if a matter raises substantial federal questions. It will be sufficient here to explain this in relation to the circumstances of this case.

While civil rights laws aim for the protection of prisoners who are held involuntarily in confinement, Congress never intended that the laws were to be used for the purpose of disregarding the basic fact that such individuals who seek aid from the courts should be able to sweep aside the fact, also, that they are incarcerated as a matter of punishment for criminal violations even though they are accorded the protection of due process.

Lawful incarceration necessarily operates to deprive a prisoner of certain rights and privileges he would otherwise enjoy in a free society. *Courtney v. Bishop*, 409 F.2d 1185, C.A. 8, 1969, cert. den. 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192. Some deprivations are a necessary and expected result of being an inmate of a penal institution which must provide for the custody, maintenance, discipline and, optimistically, rehabilitation of those who have violated the laws of the sovereign. *Gray v. Creamer*, 465 F.2d 179, C.A. 3, 1970, on remand D.C., 376 F.Supp. 675. A prisoner does not retain constitutional rights which are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *Newman v. State of Alabama*, 559 F.2d 283, C.A. 5, 1977. Imprisonment unavoidably results in forfeiture of certain rights and privileges commonly exercised in a free society. *Gittlemacker v. Prasse*, 428 F.2d 1, C.A. 3, 1970. When a person is lawfully incarcerated in a penal institution, he loses the right, except as granted specially by a court before entering incarceration, to enter into, engage in or conduct ordinary business ventures and he does not have the right to set up his own business oriented ventures and require that special rules and regulations be tailored to accommodate such ventures. *Ray v. Brierley*, 316 F.Supp. 1057 (W.D.Pa., 1970). That a discretionary benefit has or has not been granted to a state prisoner does not of itself suggest that his rights have been unconstitutionally denied him. *Marnin v. Pinto*, 463 F.2d 583, C.A. 3, 1972.

The civil rights laws never intended that while such individuals are being incarcerated, they can have full enjoyment and freedom to do those things which all citizens normally have a right to do. When incarcerated, as a penalty for such violation of the laws of the land, a person must pay with deprivation of many personal rights and even suffer discomfort for his indiscretion in violating the law; and for him to expect that such punishment is to be tendered to him with loving care and kindness and with such luxuries as he might have

enjoyed as a hotel guest in some resort, is plainly unthinkable. It is not to be encouraged as a matter of public policy and public welfare, and for the better control of such incarcerated persons by their guards and custodians, both for themselves and those responsible for their custody. The plaintiff here is not on vacation as such is customarily understood and limitations must be imposed on his dealings, whether financial or personal. Such matters must be left to those responsible for his custody.

When important rights are at stake in prisons, courts should not be reluctant to protect them, but the judiciary must move with measured caution when it lays down requirements for affirmative action by prison administrators. *Braxton v. Carlson*, 483 F.2d 933, C.A. 3, 1973. Except under exceptional circumstances, internal matters such as rules and regulations in state prisons are the sole concern of states, and federal courts will not inquire concerning them. *Walker v. Pate*, 356 F.2d 502, C.A. 7, 1966, cert. den. 384 U.S. 966, 86 S.Ct. 1598, 16 L.Ed.2d 678. And, federal courts will not interfere with uniformly applied prison regulations designed to achieve discipline, and which are indispensable to the orderly operation of state penal institutions. *United States ex rel. Raymond v. Rundle*, 276 F.Supp. 637 (D.C.Pa., 1967). As for the plaintiff's efforts to stretch prisoner civil rights into the realm of rehabilitation programs, periodic chest X-rays and other phases of medical facilities and adequacies, these are the discretionary responsibilities of the constituted officials. Courts cannot be concerned with prison menu or the lack of medical care to which prisoners believe they are entitled or the lack of exercise or the lack of access to special religious services. These involve matters of internal prison administration. *Krist v. Smith*, 439 F.2d 146, C.A. 5, 1971.

Thus, it is that financial matters in and out of a place of custody, visitation and the like, must exclusively be left to the authorities prescribed by the Commonwealth of Pennsylvania. Interference by federal courts with the Commonwealth's responsibilities and obligations has never been authorized by any federal statute or by the Constitution of the United States. The welfare of all people both inside and outside of prison walls must be of utmost concern to a government, and it is for the courts, acting always under the direction of law, to balance the welfare of the public as well as those whom the law must necessarily incarcerate for interference with the public's welfare. Accordingly, while courts seek to protect the welfare of those incarcerated, courts can do so only within the limits of authority granted them by the Constitution and law. Under these circumstances prisoner complaints relating to conditions concerning clothing issued, or repairs of facilities and the like, are matters of internal concern and should be presented to the administrators of the institution to correct on each occasion when and where they occur since they are bound to occur on an almost daily basis. *Sparks v. Fuller*, 506 F.2d 1238, C.A. 1, 1974. Since it is not the function of courts to superintend treatment [3] and discipline of prisoners in penitentiaries, and because prisoner disapproval of rules and regulations provides no jurisdiction in federal courts, petitions claiming that such restrictions effectuating such regulations violate constitutional rights, and seeking supervision over such prison administrators, do not give federal courts jurisdiction, nevertheless. *Ray v. Commonwealth of Pennsylvania*, 263 F.Supp. 630 (D.C.Pa., 1967).[4]

The Findings of Fact and Conclusions of Law and the Recommendation of the Magistrate are adopted as set forth in an Order of Court.

## ORDER OF COURT

AND NOW, TO–WIT, this 20th day of March 1980, for the reasons set forth in the

---

3. This is not applicable to "cruel and unusual punishments". United States Constitution, Amendment VIII.

4. The principles quoted here reflect federal law as it applies to state institutions charged with the custody of persons incarcerated by state authorities.

foregoing Supplemental Memorandum, the Findings of Fact, Conclusions of Law and Report and Recommendation of the United States Magistrate, are hereby adopted as the Opinion of this Court. Judgment is hereby entered for the defendants and against Jack Burton Tunnell, the plaintiff.

## MAGISTRATE'S RECOMMENDATION FOR DISPOSITION AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. *Recommendation*

It is respectfully recommended that judgment be entered against the plaintiff and in favor of the defendants.

### II. *Report*

Jack B. Tunnell has presented a civil rights complaint [1] in which he alleges that the defendants are hampering his ability to transact financial matters with private banking facilities by interfering with his use of the mails to conduct these transactions and by not permitting him free access to his bank passbooks. In addition, it is alleged that while inmates are permitted to mail order certain articles from catalogue sales stores, the inmates are not permitted to order from retailers catering to the black community; that there are inadequate rehabilitation programs for long-term inmates; that inmates are not provided with periodic chest x-rays and the Institutional medical facilities are inadequate; that the dining facility is filthy, and that the defendants are denying inmates proper family visitation privileges.

The plaintiff's allegations are said to state a claim under 42 U.S.C. § 1983 and therefore he invokes the jurisdiction of this Court pursuant to Section 1343 of Title 28, United States Code. The plaintiff also seeks declaratory relief. Named as defendants in this action are officials of the Pennsylvania Bureau of Corrections as well as various officials and employees of the State Correctional Institution at Pittsburgh, where the plaintiff is incarcerated.

After the period for pretrial discovery had elapsed, the matter was referred to the undersigned United States Magistrate for evidentiary hearing and the submission of proposed findings of fact and a recommendation for disposition. Accordingly, a pretrial conference was held which resulted in the filing of a stipulation of facts on December 14, 1979, and the matter came on for final evidentiary hearing on that same date. Following that hearing a summary of the testimony was prepared and submitted to all parties with an order granting them ten (10) days to file objections, if any, to that summary. The time for filing objections has elapsed, none have been received, and the matter is now in a posture for disposition.

The first issue which the plaintiff raises concerns the fact that he has been denied the opportunity to participate in picnic visitations with members of his family. Furthermore, the plaintiff objects to the fact that an inmate is not permitted to have more than five visitors at any one time. The parties have stipulated that "an inmate is permitted to list 20 addresses on his approved visitors list which enables any number of persons from that address to visit him at the Institution. However, at any one time an inmate may not have more than five visitors who are permitted to visit for up to three hours on weekdays and for up to one hour on weekends. However, while no more than five visitors are permitted at any one time, those who are visiting may depart and their place taken by other persons during the three or one hour visitation period." In addition, upon request, extended visitation privileges may be made for persons who have to travel over 200 miles to the Institution.

The manner in which visitation privileges are granted rests within the discretion of prison administrators. *Inmates v. Robinson*, 612 F.2d 754 (3d Cir. 1979). It is

1. In an Order dated December 17, 1979, coplaintiff Bernett L. Johnson's motion to withdraw as a party plaintiff was granted.

only when visitation is denied in an unreasonable or discriminatory manner that an actionable fact exists. *Thomas v. Brierley*, 481 F.2d 660 (3d Cir. 1973).

■ In the present case there is no allegation that allowance of visitation privileges are being arbitrarily or discriminatorily denied to the plaintiff, and therefore the plaintiff has failed to state a claim in this regard.

■ The plaintiff next contends that although he does not eat in the dining hall and has elected not to participate in any rehabilitation programs as a result of his self-imposed isolation, the conditions of the dining hall and the manner in which vocational training is offered constitute a violation of his civil rights. In Civil Action No. 77–1271, *Maxwell v. Robinson*, these same allegations were raised and dismissed. There has not been any showing on the part of the plaintiff that conditions have changed since the time of that suit, and therefore, the same conclusion applies, i. e. that the dining facilities and the rehabilitation programs are not being administered in a fashion which is violative of the inmates' civil rights.

■ The plaintiff also alleges that routine physical examinations are not conducted. Lack of medical treatment becomes actionable only when it involves deliberate indifference to a serious medical need of an inmate. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *United States ex rel. Walker v. Fayette Cty., Pa.*, 599 F.2d 573 (3d Cir. 1979). In the present case, the plaintiff has not demonstrated any indifference to his needs, nor has he even demonstrated that he was denied routine medical treatment. Rather, he alleges that he believes that the institution should inaugurate some routine program of medical examinations. The lack of such a program clearly does not constitute deliberate indifference to a serious medical need.

■ The next series of allegations raised by the plaintiff concern the institutional policy concerning money and bank accounts. It has been stipulated that "in-

mates are not permitted to possess a bank savings account book from a private banking institution. Such account books are held by the prison authorities and are available for viewing by the inmate to whom they have been issued." Since "money is regarded as contraband within the State Correctional Institution" all financial transactions must be conducted through the inmate account office and "inmates are provided with receipts for all financial transactions occurring under the supervision of the Institution."

As the Court observed in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the operation of penal institutions,

"... are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their judgment in such matters." 441 U.S. at 541 n. 23, 99 S.Ct. at 1875.

In the present case, the testimony disclosed that in most instances financial transactions are processed with the utmost dispatch, although there have been some isolated instances in which some time has elapsed before the requested transaction could be completed. While it would be most desirable to conclude these transactions within a very short time interval, it is also true that the institution must operate within the framework of available personnel and priorities of functions which must be performed. Nevertheless, the evidence indicates that inmates are not deprived of access to information concerning their private bank accounts, and that in almost all instances, financial transactions are promptly executed. As such, we must defer to the expertise of institutional personnel in carrying out the inmate account procedures. *Bell v. Wolfish, supra.*

The plaintiff also objects to the fact that with the exception of government checks, all checks are deposited directly into an inmate's account, and he does not even have to endorse the checks. This, too, is part of

institutional policy management procedures. Furthermore, the testimony disclosed that inmates receive full statements concerning the sources and amounts of funds credited to their accounts. Thus, no harmful effects of this procedure have been demonstrated.

 The final allegation made by the petitioner concerns the fact that inmates are permitted to order items from only three large catalog sales chains and not from other sales establishments. It has been stipulated that "inmates are not permitted to purchase articles from sources outside the Institution except they may order from three large mail order houses. Exceptions to this rule are permitted for such items such as books, magazines, religious articles and art supplies." In addition, testimony was presented that relatives of inmates are permitted to send in other articles which have been purchased anywhere throughout the economy, subject only to routine inspection upon arrival at the Institution. Thus, again the plaintiff has failed to demonstrate an invasion of his civil rights.

It is provided in 42 U.S.C. § 1983 that:

"Every person, who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution, and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In the present case, the plaintiff has presented a series of grievances which he would like to see corrected. However, none of the matters raised amount to deprivations of constitutional proportion or involve matters secured by the laws of the United States.

Thus, the plaintiff has failed to sustain his burden of demonstrating that he is entitled to any relief. Accordingly, it is respectfully recommended that judgment be entered against the plaintiff and in favor of the defendants.

### III. *Proposed Findings of Fact*

1. Jack Tunnell, the plaintiff in the above-captioned case, is an inmate at the State Correctional Institution at Pittsburgh.

2. The defendants in this action are officials of the Pennsylvania Bureau of Corrections and various officials and employees of the State Correctional Institution at Pittsburgh.

3. Inmates at the State Correctional Institution may not have more than five visitors at any one time and those visits are limited to three hours on weekdays and one hour on weekends.

4. Upon request special visiting arrangements can be made for persons traveling over 200 miles to visit inmates.

5. The conditions in the prison dining hall are not unsanitary.

6. The plaintiff is not being arbitrarily denied an opportunity to participate in rehabilitation programs.

7. No showing has been made that the plaintiff has experienced indifference to a serious medical need.

8. Money is regarded as contraband at the institution.

9. All inmate financial transactions must be conducted through the inmate accounts office.

10. With few exceptions all inmate financial transactions are conducted expeditiously.

11. The manner in which inmates may order articles from suppliers outside the Institution is not unduly restrictive.

12. None of the matters alleged in this suit constitute violations of any rights assured by the Constitution or laws of the United States.

### IV. *Proposed Conclusions of Law*

1. This Court has jurisdiction over the subject matter of this action brought under the provisions of 42 U.S.C. § 1983 and in-

voking the jurisdiction of this Court pursuant to Section 1343 of Title 28, United States Code.

2. The plaintiff has failed to demonstrate an abridgement of any right secured to him under the Constitution or laws of the United States.

3. Judgment should be entered against the plaintiff and in favor of the defendants.