James Earl BUIE, Appellant,

v.

Otis JONES, Sheriff; Frank Armstrong, Chief Jailer; Robert L. Hubbard, Jailer; Cumberland County of N.C., Appellees.

Nos. 82–6201, 82–6522.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 11, 1983.

Decided Sept. 15, 1983.

---

Kenneth A. Zick, II, Associate Professor of Law, Wake Forest University School of Law, Winston-Salem, N.C., Michele C. Bartoli, Third Year Law Student (Alexis C. Pearce, Third Year Law Student on brief) for appellant.

Larry J. McGlothlin and Garris Neil Yarborough, Fayetteville, N.C., for appellees.

Before RUSSELL and MURNAGHAN, Circuit Judges, and ROBERT R. MERHIGE, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

DONALD RUSSELL, Circuit Judge:

James E. Buie, a State prisoner, appeals the grant of summary judgment in favor of the defendants in his civil rights actions under Section 1983, 42 U.S.C. against the sheriff, the deputy sheriff of Cumberland County (North Carolina) and the chief jailer of the Cumberland County Jail.

The action was first filed by the plaintiff *pro se* and an order was issued by the district court permitting the plaintiff to proceed *pro forma pauperis*. The actions were thereafter duly referred to the Magistrate. After a hearing the Magistrate dismissed the actions and granted summary judgment to the defendants on all the claims. This appeal by the plaintiff followed. We affirm.

Though the plaintiff asserted in his complaint some ten alleged constitutional violations, he has on this appeal confined his claims of error to three alleged deprivations. These are (1) a violation of his visitation rights with his minor children, (2) his subjection to a strip and body-cavity search in violation of his right to be free from unreasonable searches, and (3) an infringement of his right of free speech by reason of the opening of his mail by jail personnel, all while confined at the Cumberland County Jail. In pressing these claims, he sought both damages and injunctive and declaratory relief. The Magistrate dismissed his claim arising out of the strip search under the authority of *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). We affirm such dismissal. The plaintiff's claim that his mail was opened without his presence in violation of his First and Fourteenth Amendment rights involves a few isolated instances of plaintiff's mail being opened out of his presence. These isolated instances, however, did appear to have been contrary to the policy of the Jail and to have been either accidental or the result of unauthorized subordinate conduct and were not of constitutional magnitude. A pretrial detainee's visitation rights were not definitely established as a constitutional right during the time the plaintiff was incarcerated as a pretrial detainee at the Cumberland County Jail. For this reason damages are not recoverable. Accordingly declaratory and injunctive relief represented the only relief that would have been available to the plaintiff under his claim of a denial of visitation rights. Whether the plaintiff was entitled to such relief is the single issue for determination on this appeal.

To understand this issue of the plaintiff's right to visitation privileges, it is necessary to sketch the facts in this case. The plaintiff Buie is a convicted prisoner serving not a short sentence but a sentence of life imprisonment plus ten years imposed following his conviction of first degree burglary

and felonious larceny. For purposes of service of his sentences, he has been committed by the North Carolina Department of Corrections to a State prison facility, the Odom Prison Unit, where, except for a short period in early 1980, he has been continuously confined since his conviction on October 7, 1977. His confinement in the Cumberland County Jail, about which he complains,[1] is limited to two brief periods. Between his arrest in April, 1977 and his conviction on October 7, 1977, Buie had been confined as a pretrial detainee in the Cumberland County Jail for a period of about forty-odd days.[2] In late March, 1980, Buie as a convicted prisoner was returned from Odom Prison Unit to the Cumberland County Jail for two temporary periods, one of about twenty-eight days and the other for about eight days, to enable him to participate in other litigation apparently in Cumberland County. It was on the last day of his presence at the Cumberland County Jail that Buie filed this § 1983 action.

■ The plaintiff as a convicted prisoner under a life sentence plus a ten year additional sentence, is permanently assigned to a regular State prison installation under the control and supervision of the North Carolina Department of Corrections, the Odom Prison Unit. He has not been confined to the Cumberland County Jail since May, 1980 and, as a convicted prisoner under a life sentence plus, cannot reasonably be expected within the foreseeable future to be transferred back to the Cumberland County Jail which is primarily a place of confinement for pretrial detainees. Under those circumstances, any claim of Buie for injunctive or declaratory relief against the officials of the Cumberland County Jail would appear to be moot under the authorities of

this Circuit. *Inmates v. Owens,* 561 F.2d 560 (4th Cir.1977), it would appear, is conclusive on this point.

In that case, the plaintiffs, like Buie, sought injunctive and declaratory relief with reference to conditions in the Portsmouth county jail while they were confined as pretrial detainees in such installation. The District Court dismissed "the suit because the complainants had not alleged that they, themselves, suffered from any of" the conditions of confinement complained of. An appeal followed. While that appeal was pending "all nine inmates who originally signed the complaint [were] released from the Portsmouth jail." In the interim between that release and the hearing on appeal, one of the original plaintiffs was rearrested and presumably was placed in the Portsmouth jail. We nonetheless dismissed the appeal as moot. In so doing, we were not deterred by the fact that one of the original plaintiffs had been rearrested from holding that, in the absence of proof that the rearrested plaintiff was "again being subjected to the alleged constitutional deprivations specified in the complaint since his rearrest," at the jail, the claim of "capable of repetition" was insufficient to provide a "safeharbor" against a finding of mootness. 501 F.2d at 562, n. 2. That case is accordingly direct authority for the dismissal of this action for mootness.

■ There is, however, a more compelling reason for the dismissal of Buie's claim to declaratory and injunctive relief than mootness. It is a reason grounded in constitutional principles as declared in *City of Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). In that case, the plaintiff sought damages and in-

1. The Cumberland County Jail is under the custody of the County Sheriff and is not "a permanent housing facility for prisoners who have been convicted of crime" under the control of the North Carolina Department of Corrections, but is "a 'hold-over' facility in which prisoners are held for a relatively short period of time prior to trial and then, following trial and sentencing, are transported immediately to a more permanent facility where increased facilities are available."

2. The period of Buie's confinement as a pretrial detainee at the Cumberland County Jail began on April 12, 1977, was interrupted by Buie's transfer to the Dorothea Dix Hospital from April 22, resumed on May 12 and continued until June 13 when he was released on bond, and finally resumed on October 4, 1977, with the commencement of his trial and ended on October 7 with his conviction and transfer to Odom Prison Unit.

junctive and declaratory relief because the city officers, stopping the plaintiff for a traffic violation, had allegedly, without provocation or justification subjected him to an excessive "chokehold" which rendered him unconscious and inflicted damage to his larynx. It was the plaintiff's contention that a "chokehold," administered under such circumstances, was a violation of his constitutional rights. While the case was pending on appeal in the Supreme Court, the Board of Police Commissioners "imposed a six-month moratorium on the use of the carotid-artery chokehold except under circumstances where deadly force is authorized." At that point, the defendant City filed a Memorandum Suggesting a Question of Mootness, and attached a motion to dismiss the writ of certiorari as improvidently granted. The Supreme Court denied the motion "but reserved the question of mootness for later consideration." After hearing, the Court ruled that the case was "not moot, since the moratorium, by its terms is not permanent." However, the Supreme Court proceeded to hold, on constitutional grounds, that "the federal courts are without jurisdiction to entertain Lyons' claim for injunctive relief" on another ground.

In explication of this other ground, the Court in that case declared that "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." It then defined "an actual case or controversy" to be one in which the plaintiff "must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." It is not enough, the Court added, that the plaintiff " 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct," rather, "the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' " Moreover, as it further explained, " '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding in-

junctive relief . . . if unaccompanied by any continuing, present adverse effects.' " It then addressed the possible contention that the constitutional infringement was within the "capable of repetition yet evading review" exception. The establishment of such exception in the standing context, the Court said "depended on whether [the plaintiff] was likely to suffer future injury from the use of the chokeholds by police officers," adding by way of further explanation:

> "If Lyons has made no showing that he is realistically threatened by a repetition of his experience of October, 1976, then he has not met the requirements for seeking an injunction in a federal court, whether the injunction contemplates intrusive structural relief or the cessation of a discrete practice."

It went on to state that, while Lyons alleged that it was "routine" for the Los Angeles Police to subject any person stopped for a traffic violation to the challenged chokehold, that fact "does nothing to establish a real and immediate threat that [the plaintiff] would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." Finding in the case no "real and immediate threat" of repetition, the Supreme Court ordered dismissal of the claim for injunctive and declaratory relief.

It follows from *Lyons* that, in order to invoke the defense of "capable of repetition" to a claim of mootness, it is necessary that there be a "realistic threat," a "real and immediate threat," of repetition and the burden of establishing or demonstrating that fact rests with him who asserts that defense. If that be the true rule, it cannot reasonably be said in this case that there is any reasonable probability that within the foreseeable "immediate" future Buie, who is confined under a life plus sentence, is going again to be arrested in Cumberland County and confined as a pretrial detainee in the Cumberland County Jail. He is not like the plaintiffs in *Owens* who were

quickly released or the plaintiff in *Lyons,* who similarly was released. There is no suggestion that Buie has any "immediate" prospects of release. In short, Buie is without any "'personal stake in the outcome'" of this attack on the visitation rules at the Cumberland County Jail and there is no "realistic" basis for assuming that he will be harmed or benefited by a decision on such visitation rights. He manifestly lacks standing both under *Lyons* and under *Valley Forge College v. American United,* 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982) (in this case the Supreme Court said that for a plaintiff to have standing, the right he asserts must be one that "'is likely to be redressed by a favorable decision'").

Accordingly the plaintiff has no standing to assert a claim for injunctive and declaratory relief in connection with any denial of an alleged privilege of visitation rights as a pretrial detainee; in addition, such claim is moot.

For the foregoing reasons the judgment of the district court is

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring:

Concurrence in Judge Russell's opinion is mandated by the consideration that Buie is without a stake or interest making it inappropriate for him to raise the interesting legal question at issue.

However, those who operate detention facilities, whether in the form of local jails or prisons, should be aware that the absolute prohibition on visitation by a detainee's minor children such as is alleged here is almost certainly unconstitutional. *See Jones v. Diamond,* 636 F.2d 1364, 1377 n. 12 (5th Cir.1978) (*en banc*), *cert. granted,* 452 U.S. 959, 101 S.Ct. 3106, 69 L.Ed.2d 970 (1981), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *Nicholson v. Choctaw County, Ala.,* 498 F.Supp. 295, 310 (S.D. Ala.1980); *Valentine v. Englehardt,* 474 F.Supp. 294, 301–02 (D.N.J.1979).