**Albert FORD and Clifford Futch, Plaintiffs,**

**v.**

**Edward BEISTER, et al., Defendants.**

Civ. No. 80–0992.

United States District Court, M.D. Pennsylvania.

April 16, 1986.

Erika Kreisman, Pittsburgh, Pa., for plaintiffs.

Francis R. Filipi, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Before the court is a Report of Magistrate Raymond J. Durkin dated January 31, 1986, recommending that defendants' Motion for Summary Judgment be granted with respect to all issues except Plaintiff Ford's (Ford) transfer from administrative custody to S-2 administrative custody without a hearing. Plaintiffs filed Objections to Report of the Magistrate and a brief in support thereof on March 7, 1986, in accordance with a request for an enlargement of time to file said objections. *See* Document 121 of the Record. Defendants filed a Brief in Opposition to Plaintiffs' Objections to the Magistrate's Report on March 18, 1986. Reply time having lapsed, plaintiffs' objections are ripe for disposition. For the reasons set forth below, the case will be remanded to the Magistrate.

## DISCUSSION

The background of this action is set forth extensively in the Magistrate's Report. A brief review of the factual predicate for this matter reveals the following. Plaintiffs, former inmates at the State Correctional Institution (SCI), Dallas, Pennsylvania, filed this § 1983 action, in essence, attacking the long term segregation of certain prisoners in the Restricted Housing Unit (RHU) at SCI Dallas. Plaintiff Ford has been convicted of two (2) counts of murder in the first degree, aggravated robbery, conspiracy, burglary, carrying a concealed deadly weapon and simple assault. Ford is currently serving a sentence of life

imprisonment. Plaintiff Futch (Futch) has been convicted of larceny of an automobile, breaking and entering, assault with intent to murder, murder in the first degree, assault with intent to kill and assault by a life prisoner. Futch is currently serving a sentence of life imprisonment with consecutive sentences of three and one-half (3½) to seven (7) years and life imprisonment if his current life sentence is ever commuted. The institutional records of both plaintiffs indicate that they have been less than "model prisoners" during their period of incarceration.

Two (2) examples of plaintiffs' violent and often erratic behavior are sufficient for present purposes. In March 1979, Futch was transferred to Farview State Hospital for a mental health evaluation, leaving SCI Dallas in maximum custody status. While at Farview, Futch escaped with one Russell Shoats, through the assistance of a visitor, and a security aide was kidnapped during this episode. Suffice to say, when the escapees were apprehended, they did not surrender "without a fight," leaving behind literally hundreds of rounds of spent ammunition and a veritable cache of weapons. As a result, Futch was returned to SCI Dallas in maximum custody status. For his part, on one occasion Ford stabbed another prisoner a total of five (5) times with a sharpened, tablespoon handle, which had to be forcibly taken from him after the incident. Ford plead guilty to a charge of simple assault, receiving a sentence of three (3) to six (6) months, to run concurrent with his existing sentence.

Restricted housing calls for reduced mobility of prisoners for security reasons, *i.e.*, prisoners in RHU are only permitted to exercise in small numbers, they must eat meals in their cells and they are not permitted to attend activities in congregate with the general population. In this case, both plaintiffs received, at a minimum, in-person interviews every thirty (30) days by a Program Review Committee at SCI Dallas. Moreover, a chaplain and doctor are required to visit the RHU every day to assure that prisoners who desire such assistance will receive it. *See e.g.*, Documents

108 and 116 of the Record (Defendants' Statement of Facts Which They Submit Are Not In Dispute and Statement Of Material Facts in Opposition to Motion For Summary Judgment). With this brief factual background in mind, the court focuses on the legal issues raised by the parties.

The Magistrate found seven (7) issues to which the Motion for Summary Judgment was directed. Those issues were: (1) the denial of a meaningful periodic review of continued confinement in administrative segregation; (2) the alleged cruel and unusual punishment relating to long term confinement in administrative segregation, coupled with the denial of adequate exercise; (3) the denial of congregational religious services in segregation; (4) the denial of visitation by children of inmates under the age of eighteen (18) in segregation; (5) the interference with incoming mail from Ford's sister; (6) the confiscation of a Muslim Newsletter from Futch; and (7) the alleged denial of a hearing prior to placement in administrative segregation in March 1980 for Futch, and "recently" for Ford. *See* Document 120 of the Record at 4. The Magistrate carefully analyzed each claim, finding that defendant was entitled to summary judgment on all claims except the denial of a hearing prior to Ford's placement in administrative custody "recently." Defendants do not object to the Magistrate's recommendations, including this latter claim. Plaintiffs object to the Magistrate's Report on three (3) grounds. Each objection will be considered *seriatim.*[1]

## I.

Plaintiffs belatedly filed a third amended complaint naming an additional defendant (DeRamus) after the present Motion for Summary Judgment was filed. The Magistrate recognizes that disposition of the motion with respect to the named defendants at the time the motion was filed, out of necessity, would have the effect of disposing of the claims as far as DeRamus is concerned. *Id.* at 2 n. 1. Plaintiffs object to this conclusion.

In apparent support, plaintiffs frame the issue as follows: "Should summary judgment be granted with regard to the allegations against ... DeRamus that he should have transferred plaintiffs from this medium security setting to a maximum security prison where they could be placed in population." Document 123 of the Record at 2. Essentially, plaintiffs maintain that DeRamus, who allegedly is in charge of transfers, violated plaintiffs' constitutional rights by not transferring them to a maximum security prison. The court finds that the decision *not* to transfer plaintiffs to a *higher security prison* cannot amount to a violation of plaintiffs' constitutional rights.

In *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), the United States Supreme Court recognized that the Due Process Clause does not protect a convicted prisoner against transfer from one institution to another. *Id.* at 245, 103 S.Ct. at 1745. An inmate has no justifiable expectation that he will be incarcerated in a particular prison. *Id.* In this case, plaintiffs point to nothing in state regulations conferring a liberty interest in being or not being transferred. Thus, there is no basis for plaintiffs' claim against DeRamus. The failure to transfer plaintiffs to another institution of higher security cannot support a finding that DeRamus violated plaintiffs' constitutional rights. In sum, plaintiffs have not demonstrated that there is a protected interest in their being transferred. The absence of this showing is fatal to plaintiffs' claim. *See e.g., Mims v. Shapp,* 744 F.2d 946 (3d Cir.1984) (threshold question in determining whether there has been a deprivation of rights without due process is whether there is a protected interest at issue).

1. The court agrees with the Magistrate's recommendation concerning the first, second, fourth, fifth, sixth and seventh grounds for relief. Accordingly, summary judgment will be granted in favor of defendants on each claim except the denial of a hearing for Ford "recently" when he was placed in S–2 administrative custody and the denial of congregational religious services in segregation.

## II.

■ Secondly, plaintiffs object to the Magistrate's recommendation concerning the issue of meaningful subjective evaluation of the inmate's status in long term solitary confinement. The Magistrate's Report provides a detailed analysis of this issue. Document 120 of the Record at 5–16. In so doing, the Magistrate recognized that prison officials may make subjective evaluations in determining administrative segregation. *See Mims v. Shapp, supra.* Plaintiffs aver that the monthly reviews were "perfunctory and misleading" and apparently that the subjective evaluations concerning plaintiffs were not reasonable. The court does not agree for the reasons set forth in the Magistrate's Report. Document 120 of the Record at 12–13. Plaintiffs offer no concrete evidence to rebut defendants' assertions, therefore, summary judgment is appropriate. In *Mims,* our Court of Appeals recognized the principle of judicial deference to prison officials in an attempt to deal with threats to internal security. *Id.* at 953. The Magistrate correctly applied this standard in the present case.

## III.

Plaintiffs' final objection concerns the Magistrate's recommendation with regard to visitation of children under eighteen (18) years of age with inmates in restricted housing. In support, plaintiffs maintain that the recent case of *Shabazz v. O'Lone,* 782 F.2d 416 (3d Cir.1986), requires that accommodation be reached on important issues. Thus, plaintiffs' position is that a *ban* on child visitations to those in restricted housing without individual determinations is *per se* unreasonable. The Magistrate states that plaintiffs failed to dispel the concerns and justifications of prison officials in electing to limit these visits to those eighteen (18) years of age or older.

In *Shabazz,* our Court of Appeals reaffirmed the principle that "when a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Id.* at 419. There must be a "mutual accommodation" between the important institutional objective of security and the *constitutionally protected rights* of prisoners. *Id.* at 420. Defendants, however, maintain that there is no constitutional right to visitation privileges and, therefore, this "mutual accommodation" standard does not apply. Similarly, the Magistrate found that prison officials may limit visitation privileges so long as the limitations are not unreasonable or discriminatory. *See Tunnell v. Robinson,* 486 F.Supp. 1265 (W.D.Pa.1980).

■ In *Tunnell v. Robinson, supra,* the court held that visitation privileges are a matter within the discretion of prison administrators. *Id.* at 1270. It is only when this discretion is exercised in an unreasonable or discriminatory manner that an actionable fact exists. *Id.* at 1270–71. *See also Hodgin v. Agents of Montgomery County,* 619 F.Supp. 1550 (E.D.Pa.1985) (prison officials have substantial discretion in regulating visiting privileges). I agree with this reasoning. Accordingly, denial of this discretionary privilege, if not unreasonable or discriminatory, does not amount to an abridgement of a federal constitutional right. *See McCray v. Sullivan,* 509 F.2d 1332 (5th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975) (failure to permit conjugal visits does not deny inmate a federal constitutional right).

In *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), the Supreme Court had to decide "whether petitioner's blanket prohibition on contact visits at Central Jail is reasonably related to the security of that facility." *Id.,* 104 S.Ct. at 3232. In *Block,* the issue concerned pretrial detainees incarcerated at the jail. The court held, "in sum, we conclude that petitioner's blanket prohibition is an entirely reasonable, nonpunitive response to the legitimate security concerns identified, consistent with the Fourteenth Amendment." *Id.* at 3233–34. In so holding, the court recognized:

> In rejecting the District Court's order, we do not in any sense denigrate the importance of visits from family or friends to the detainee. Nor do we in-

tend to suggest that contact visits might not be a factor contributing to the ultimate reintegration of the detainee into society. We hold only that the Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility.

*Id.* at 3234.

■ Moreover, in *Thorne v. Jones*, 765 F.2d 1270 (5th Cir.1985), *cert. denied,* — U.S. —, —, 106 S.Ct. 1198, 1199, 89 L.Ed.2d 313 (1986), the court held that incarcerated persons "maintain no right to simple physical association—with their parents or with anyone else—grounded in the first amendment." *Id.* at 1274. "Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls." *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125–26, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977). "The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside the penal institution." *Id.* at 126, 97 S.Ct. at 2538. The *Thorne* court, referring to the above passage, stated, "this language is itself sufficient to refute the notion that incarcerated prisoners retain any absolute rights of physical association; moreover, we have held 'that for convicted prisoners "[v]isitation privileges are a matter subject to the discretion of prison officials." ' " *Id.* at 1273 (citations omitted). In this case, therefore, the ban on "child" visitation withstands judicial scrutiny. As discussed, the Magistrate recognized that there is nothing in the record to indicate that the ban is unreasonable or discriminatory. *See Mayberry v. Robinson,* 427 F.Supp. 297 (M.D.Pa.1977). The ban in this case applies to prisoners housed in maximum security because these prisoners do not visit in the regular visiting room. Visitors of prisoners in maximum security must proceed to the virtual center of the institution to meet with the prisoners. Plaintiffs have not negated defendants' rationale for prohibiting visitors under eighteen (18) years of age from proceeding to the center of the prison to visit RHU inmates.

The court's decision is supported by language in *Shabazz* concerning practices that lie "at the core of an explicit constitutional guarantee." *Id.* at 420. "Federal courts must afford deference to decisions by prison officials in areas concerning security, but where first amendment values are implicated such deference must be tempered by an effort to accommodate *free exercise values.*" *Id.* The court distinguished Supreme Court opinions requiring deference to prison officials in matters not involving practices such as the right to attend religious services central to a prisoner's faith and stated, "cases concerning rights of association or privacy provide uncertain guidance in resolving the clash of interests presented here." *Id.* Accordingly, the court recognized the difference between "free exercise" rights and rights of association.

In *Inmates of Allegheny City Jail v. Pierce,* 612 F.2d 754 (3d Cir.1979), our Court of Appeals held that the denial of contact visits to pre-trial detainees did not deprive the inmates of due process under the Fourteenth Amendment. The court found that the prohibition was a permissible restriction in the factual context of the case, *even assuming a fundamental right was implicated. Id.* at 759. In so holding, the court did recognize that the regulation in question did not preclude an inmate "from visiting with members of his family and others, but only from physical contact with these individuals." *Id.* at 759–60. Thus, there may be a distinction between a ban on contact visits and a ban on *all* visitation by inmate's children. In fact, in *Pierce,* the court, in a footnote, stated, "we note that the restriction at issue here does not prevent visits from non-inmates but only prohibits contact visits." *Id.* at 760 n. 3 *citing Valentine v. Englehardt,* 474 F.Supp. 294 (D.N.J.1979).

In *Valentine,* the court held that a ban on visitation by children was unconstitutional. The plaintiffs in *Valentine,* however, as in *Pierce,* were pre-trial detainees. *See also Buie v. Jones,* 717 F.2d 925 (4th

Cir.1983) (Murnaghan, J., concurring) (absolute prohibition on visitation by a detainee's minor children is almost certainly unconstitutional); *Robinson v. Palmer*, 619 F.Supp. 344, 348 n. 6 (D.D.C.1985) (ban on certain family members from visitation of prisoner may implicate constitutionally protected family rights); *Nicholson v. Choctaw County*, 498 F.Supp. 295 (S.D.Ala. 1980) (pretrial detainees have the right to reasonable visitation from their children). Certainly, it can be argued that a detainee, awaiting trial, has a more fundamental right to visitation than a prisoner who already has been convicted and imprisoned. In any event, this court is unwilling to accord the alleged "right" to child visitation the same stature which our Court of Appeals places on so-called "free exercise" rights. It is not established that prisoners have a constitutional right to visitation and this court finds the Fifth Circuit Court of Appeals' decision in *Thorne* persuasive in this regard.

Furthermore, as the Magistrate articulates, the "ban" in this case is reasonable and plaintiffs have not in any way dispelled the "concerns and justifications for electing to limit visits to those 18 years of age or older." Document 120 at 27. Consequently, *assuming arguendo,* that a constitutional right is implicated, nothing in the record indicates other reasonable methods of permitting child visitation to those in restricted housing without compromising the internal security of the prison.

## IV.

■ Finally, the court, *sua sponte,* will remand the case so that plaintiffs' claim of the denial of congregational religious services to those in segregation can be analyzed in light of *Shabazz.* The Magistrate specifically relied on the then applicable standard enunciated in *St. Claire v. Cuyler*, 634 F.2d 109 (3d Cir.1980), in determining the issue. As discussed, this standard has been modified in cases involving the free exercise clause. The Magistrate notes, "... it appears that the above considerations, *although they may have been presented in more detail,* constitute a sufficient articulation of security reasons to deny congregational religious services to those in maximum security...." Document 120 at 25 (emphasis added). It may be that these security considerations must be set forth in detail and that defendants must show "that no reasonable method exists by which appellants' (plaintiffs') religious rights can be accommodated without creating bona fide security problems." *Shabazz v. O'Lone, supra,* at 420. Accordingly, the case will be remanded to the Magistrate for consideration of plaintiffs' two (2) remaining claims.

A pre-trial conference may be appropriate to clarify and perhaps resolve the remaining two (2) issues. For example, as the Magistrate recognizes, the parties appear to be referring to different incidents concerning Ford's transfer to S–2 administrative custody "recently." Moreover, it is not clear whether the need for a hearing was triggered by this transfer. It certainly appears that both parties can clarify this issue. As to the denial of congregational religious services, the court questions plaintiffs' desire to maintain this claim in light of their failure to object to the Magistrate's recommendation in this regard. At the very least, the parties' positions concerning this issue should be more specifically articulated.

An appropriate Order will enter.

## ORDER

NOW, this 16th day of April, 1986, in accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) Defendants' Motion for Summary Judgment is granted *except* as to the alleged denial of a hearing prior to Ford's transfer from administrative custody to S–2 administrative custody and the denial of congregational religious services in segregation.

(2) The case is remanded to the Magistrate for further consideration consistent with this Memorandum and Order.