MAIN ROAD, an unincorporated association, by Grady Dyches, Arthur Major, James Miller, Edward Randall and Leon Washington, trustees ad litem, Grady Dyches, Arthur Major, James Miller, Edward Randall, and Leon Washington, Individually and on behalf of all others similarly situated, House of Correction 8001 State Road Philadelphia, Pennsylvania, Inmates Action Council, an unincorporated association by Charles Cobb, Albert Harden a/k/a Solomon Harden, Henry N. Horne, Michael Jordan, Gregory Martinez, William McDaniel, Jeffrey X. Robinson and Ronald Snell, trustees ad litem, and Charles Cobb, Albert

Harden a/k/a Solomon Harden, Henry N. Horne, Michael Jordan, Gregory Martinez, William McDaniel, Jeffrey X. Robinson and Ronald Snell, individually and on behalf of all others similarly situated, Holmesburg Prison, 8215 Torresdale Avenue, Philadelphia, Pennsylvania,

v.

Louis S. AYTCH, Superintendent, Philadelphia Prisons, 8201 State Road, Philadelphia, Pennsylvania.

Appeal of Walter BURESS, Jr., and Donald Waters, as individuals, as trustees ad litem for Inmate Action Council, and as representatives of the class of plaintiffs.

No. 76–2499.

United States Court of Appeals, Third Circuit.

Argued Sept. 8, 1977.

Decided Oct. 14, 1977.

---

Sheldon L. Albert, City Sol., James M. Moran, Deputy in Charge of Litigation, James M. Penny, Jr., Asst. City Sol., Philadelphia, Pa., for appellees.

Theodore Clattenburg, Jr., Elliot B. Platt, Community Legal Services, Inc., Philadelphia, Pa., for appellants.

OPINION OF THE COURT

Before SEITZ, Chief Judge and GIBBONS and WEIS, Circuit Judges.

WEIS, Circuit Judge.

After a second denial of declaratory and injunctive relief, plaintiff prison inmates again appeal, contending that their right of access to the press has been improperly restricted. We agree with the district court's conclusion that prison inmates have no constitutional right to hold group press conferences where other means of communication are available. Although the net result of the litigation is a diminution of the privileges which the plaintiffs enjoyed before they began this legal battle, we accept the contention that their Pyrrhic victory should be given the status of a judgment. Accordingly, we remand for entry of a declaratory judgment.

A class action based on the Civil Rights Act of 1871, 42 U.S.C. § 1983, was filed on behalf of persons confined in the Philadelphia prison system. The plaintiffs contended that the Superintendent of the prisons had unconstitutionally limited inmates in the opportunity to have individual interviews with members of the press as well as group press conferences. The district judge denied injunctive and declaratory relief because of his belief that the Superintendent had pursued a liberal policy in allowing press conferences and interviews, and that censorship was unlikely to recur. We vacated that order and remanded for the promulgation of regulations governing press interviews and conferences together with an administrative review procedure in the event of denial to assure a fair and rational determination of the facts. *Main Road v. Aytch*, 522 F.2d 1080 (3d Cir. 1975). A detailed review of the factual background is incorporated in that panel opinion and need not be repeated here.

Promptly after the issuance of the remand order, the defendant adopted regulations banning group press conferences which had previously been permitted, and allowing only individual interviews. The new rules provide that an inmate desiring to meet with a reporter is required to give the warden certain information in writing about the proposed discussion. An appropriate location is then designated for the interview. Requests "may be denied by the warden or his designee if the Superintend-

ent of the Philadelphia prisons, or his designee, determines that said interview would present a clear and present danger to the safety or security of the Institution or any of the inmates and/or personnel and/or visitors thereto." (Paragraph 8 of the Regulations as amended.) After receipt of a denial, the inmate within five days may request a hearing before a special board composed of the Deputy Superintendent, Director of Inmate Services, and a warden other than the one denying the request. The inmate is entitled to present his position to the board as is the warden who had refused to permit the interview. The hearing is to be held within ten days of request. The board acts as a fact-finder and is required to prepare written findings of fact as well as a disposition. Its action is administratively final.

The district court found these regulations to be constitutionally permissible and, although it agreed "that the plaintiffs' objections to the proposed regulations should be given consideration, since they make practical sense, there is no legal basis for this court ordering the modifications sought by the plaintiffs." The court then ordered that the complaint be dismissed with prejudice.

## I.

Plaintiffs' first contention is that they have a First Amendment right to group press conferences in the prisons. Although they alleged that eighty-five percent of those incarcerated are pretrial detainees, the district court concluded that for purposes of security, all prisoners should be treated alike and, moreover, regulations distinguishing between convicted inmates and others would not be feasible.

In plaintiffs' first appeal, we did not find it necessary to decide whether the Superintendent could prohibit all group press conferences. The issue is fairly presented now, however, and we conclude, as did the district court, that in the circumstances presented prison regulations barring group press conferences are not unconstitutional.

In *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the Supreme Court observed that lawful incarceration imposes limitations on constitutional rights,

including those conferred by the First Amendment. This was a repetition of the theme expressed in *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), and *Saxbe v. Washington Post Co.*, 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974), where the Court balanced the First Amendment rights of inmates with the governmental concern for prison security. The Court in *Pell* reasoned that so long as reasonable and effective means of communication to the press remain open, and no discrimination in content is imposed, prison officials must be given latitude. 417 U.S. at 826, 94 S.Ct. 2800.

■ Those who challenge the scope of prison regulations limiting inmate contacts with the press must produce substantial evidence to indicate that the officials have exaggerated their responses to security concerns and penological objectives, *Pell v. Procunier, supra* at 827, 94 S.Ct. 2800. In the absence of such evidence, courts should defer to the informed discretion of prison authorities in this context and permit them "to make the difficult judgments concerning institutional operations in situations such as this." *Jones v. North Carolina Prisoners' Labor Union Inc., supra*, 433 U.S. at 128, 97 S.Ct. at 2539.

■ Plaintiffs here have failed to demonstrate that the prison officials' prohibition of group press conferences does not have a legitimate relationship to security within the prisons. The fact that many of the inmates have not been convicted does not reduce the importance of security concerns. The record recites instances of serious disorders, particularly in the Holmesburg Prison, and, as we noted in our previous opinion, 522 F.2d at 1086, security problems in pretrial detention should not be underestimated. The state has a legitimate interest in the detention of an accused who cannot raise bail, and the prison authorities'

concern for stability justifies limitations of rights normally accorded other citizens. *United States ex rel. Tyrrell v. Speaker*, 535 F.2d 823 (3d Cir. 1976).

■ Under the proposed regulations, inmates of the Philadelphia prisons do have the opportunity to participate in individual interviews with a member of the press and, in addition, may communicate by mail. These alternatives are adequate to assure that the requisite channels of communication to the public are open. We agree, therefore, with the district judge that, in banning group press conferences, the regulations are not constitutionally deficient.

## II.

The regulations first submitted by defendant provided that individual interviews could be denied by the warden or his designee during riots, inmate lock-ups, or "other situations wherein prison officials believe that the safety and security of the institution" or that of the inmates or staff may be endangered. Plaintiffs objected to that basis for denial on the ground that it was too vague and that the proper "prison officials" were not identified. The district judge agreed and suggested an amendment be prepared. The regulation as modified authorized the warden to deny an inmate request for a press interview if "the Superintendent of Philadelphia prisons or his designee" determines that the interview would constitute "a clear and present danger"[1] to the institution or its inhabitants. The regulations establishing the special board, however, remained unaltered.

The three Philadelphia County prisons are administered by the Superintendent and each of the institutions is directed by a warden who is responsible to the Superintendent. Conceivably, therefore, if the Superintendent personally made the determi-

---

1. Language used in the *Jones* decision makes questionable whether a "clear and present danger" standard is required for restricting First Amendment rights in a prison context. Concluding that a ban on inmate union solicitation was "rationally related to the reasonable . . . objectives of prison administration," 433 U.S. at 129, 97 S.Ct. at 2540, the Supreme Court stated that "the burden was not on appellants [prison officials] to show affirmatively that the Union would be 'detrimental to proper penological objectives' or would constitute a 'present danger to security and order.'" 433 U.S. at 128, 97 S.Ct. at 2539.

nation of clear and present danger, his action would be subject to fact-finding and disposition by a board composed of his subordinates. However, in the more likely event that the determination is made by the Superintendent's designee, that situation would not exist.

Plaintiffs contend that review of the Superintendent's finding by a board of subordinates violates due process because it lacks the appearance of detached impartiality. The district judge found that the regulation was permissible, though he did not conceal his lack of enthusiasm for it. We, too, agree that it might have been better if the board had been constituted differently or if the regulation had designated a subordinate rather than the Superintendent to make the initial determination. Indeed, since the regulation as presently drawn does permit the Superintendent to delegate his decision-making authority, the undesirable feature of the appeal procedure is easily avoided.

Nevertheless, we cannot say that the composition of the special board inherently violates due process. What process is due depends upon the forum in which it is administered and the underlying circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). What is unacceptable in a judicial setting may be tolerable in an administrative proceeding. For example, a separation of the prosecutorial and judicial functions is required in a court case but not in an administrative proceeding, *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). There, the Court pointed out that the incredible variety of administrative proceedings cannot be organized under any single principle. And, as the Supreme Court said in *Dixon v. Love*, 431 U.S. 105, 115, 97 S.Ct. 1723, 1729, 52 L.Ed.2d 172 (1977): "procedural due process in the administrative setting does not always require application of the judicial model. When a governmental official is given the power to make discretionary decisions under a broad statutory standard, case by case decision making may not be the best way to assure fairness."

Much depends, of course, upon the circumstances. In *Morrissey v. Brewer, supra,* the Court, remarking that due process is flexible and calls for such procedural protections as the particular situation demands, concluded that in a parole revocation hearing an uninvolved person should preside. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), approved the use of a committee of prison officials, excluding those who investigated the charges, to determine whether prisoners' good time should be revoked. In *Meyers v. Alldredge*, 492 F.2d 296 (3d Cir. 1974), we held that a prison disciplinary board should not include the officials who had made the charge against a prisoner. And in *Braxton v. Carlson*, 483 F.2d 933 (3d Cir. 1973), an associate warden who had taken steps to bring a near-mutiny under control was found not disqualified from sitting on a disciplinary committee. There, the warden had had no personal contact with any of the appellants because of their infractions and was neither a witness nor an investigator. *See also Crooks v. Warne*, 516 F.2d 837 (2d Cir. 1975) (discussion by a board member with warden held not improper).

In *Jenkins v. Louisiana State Board of Education*, 506 F.2d 992 (5th Cir. 1975), college disciplinary board members were held not disqualified because the college president who had employed them and was their superior testified against students accused of rule violations. *See also Jonal Corp. v. District of Columbia*, 175 U.S.App. D.C. 57, 533 F.2d 1192 (1976).

In our first review, we held that the inmates of the Philadelphia prisons should be assured that a decision denying access to the press was based on a rational and fair determination, but cautioned that the review procedures should not unduly impair the efficiency of the prison system. In determining whether the procedure chosen adequately builds in the presence of a "neutral and detached" decision maker, the test is not whether we would fashion an administrative board as defendant has done here but whether we find it to be constitutionally deficient. After consideration of such

 

matters as expertise in details of prison security, the necessity for speedy disposition of the appeal, and the availability of qualified personnel on short notice, we cannot say that the board's composition is unconstitutional. Moreover, "due process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed." *Gagnon v. Scarpelli*, 411 U.S. 778, 788, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973). We do not overlook the fact that judicial review of an unfavorable ruling is available to the inmates in both state and federal courts.

Accordingly, we do not find error in the district court's conclusion that the regulations satisfied due process.

### III.

■ There is substance, however, in plaintiffs' contention that the district court should not have dismissed their complaint. As a result of the litigation, defendant has been required to eliminate consideration of content as a basis for denial of a press interview, to promulgate regulations and to institute an administrative review procedure. These steps have been taken, not merely as a settlement, but in response to directions of this court and with the approval of the district court. Plaintiffs, therefore, are entitled to entry of a judgment with the benefits of res judicata or collateral estoppel.

In the absence of definitive court action, the plaintiffs' case would produce nothing binding upon the defendant and his successors. There has been no agreement between the parties and therefore a consent decree would not be appropriate. However, a declaratory judgment in favor of the plaintiffs is in order. It should indicate that the plaintiffs are entitled to prevail to the extent provided in our earlier opinion and on this appeal. Moreover, the judgment should declare that the regulations as submitted and amended by the defendant are acceptable compliance with directions of the court.

We therefore vacate the dismissal, and remand to the district court for the entry of a declaratory judgment consistent with this opinion. In all other respects, the action of the district court is affirmed.