Michael McCRERY

v.

Dominic MARK.

Civ. No. 90–4652.

United States District Court, E.D. Pennsylvania.

May 28, 1993.

---

Michael McCrery, pro se.

Sue Ann Unger, Office of Atty. Gen., Philadelphia, PA, for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff Michael McCrery, an inmate at S.C.I. Graterford, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the continued presence in his

prison files of an erroneous 1990 psychological evaluation—completed by defendant Dominic Mark, a corrections counselor at S.C.I. Graterford—impinges upon a variety of plaintiff's liberty interests in violation of the Fourteenth Amendment.[1] Plaintiff seeks injunctive relief in the form of the expungement of the 1990 case review from his prison file and the insertion of a report into his file disclaiming the allegedly incorrect statements in the 1990 case review. Defendant has filed a motion for summary judgment.

## I. *Facts*

When considering a summary judgment motion, the court must take as true the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). For purposes of this summary judgment motion, then, the facts of the case are as follows:

In August of 1988, plaintiff was convicted of the first degree murder of his estranged wife and was sentenced to life in prison. On August 8, 1988 he was transferred to E.E.C.C. Graterford and he was soon admitted to the Mental Health Unit there for assessment and classification. On or about August 26, 1988, plaintiff received classification for S.C.I. Graterford.

Defendant Mark has been a correctional counselor at S.C.I. Graterford since April 1989. Mark Aff. at ¶ 1. McCrery was one of the inmates assigned to Mark for monitoring. According to defendant, his responsibilities as a counselor involved preparing a prescriptive program plan about once a year, completing an annual case review, and attempting to contact the inmate at least once every six months. *Id.* at ¶ 3.

At issue in plaintiff's complaint is the defendant's July 3, 1990 Annual Case Review ("ACR") of plaintiff. *See* Plaintiff's Ex. 13; Defendant Ex. H. The report, completed in plaintiff's absence since plaintiff refused to attend the scheduled meeting (Complaint at ¶ 4), states that defendant's "Areas of Concern" are plaintiff's "mental health," "assaultiveness," and "suicidal" tendencies. *Id.* The ACR further states:

1. McCrery continues to refuse to honor treatment passes.

2. Recommend Impulse Control Group.

3. Report any problem [to] counselor, Mental Health, or other appropriate staff member.

4. He has maintained a clear conduct record since reception.

*Id.* In place of plaintiff's signature, defendant wrote "in absentia." *Id.* Defendant explains that he based plaintiff's July 3 ACR on defendant's prior contacts with plaintiff and on a review of earlier records and reports concerning plaintiff. *See* Mark Affidavit at ¶ 31; *see also* Plaintiff's Ex. 4.

Plaintiff mailed his present complaint to the Clerk of the Court for the Eastern District of Pennsylvania on or about July 12, 1990 [2]—nine days after the July 3 ACR was completed. In his complaint plaintiff contends that defendant's descriptions of plaintiff as assaultive, suicidal and in need of impulse control are "pejorative labels" that have no substantive basis. Complaint at ¶¶ 5, 6, and 8. Plaintiff argues that his records do not support defendant's conclusions, particularly with regard to his supposed suicidal ideation. Plaintiff did not file a grievance with the prison officials regarding the allegedly false July 3 ACR. *Cf.* Defendant's Ex. L (copy of Administrative Directive: Commonwealth of Pennsylvania Bureau of Corrections Consolidated Inmate Grievance Review System).

In the time between the filing of plaintiff's complaint and the filing of defendant's motion for summary judgment on August 2, 1991, the plaintiff has undergone two further psychological evaluations. On November 29,

---

1. Plaintiff initially raised six claims in his complaint, five of which were dismissed as frivolous. Only the claim described in the text—count 4—remains. *See* August 16, 1990 Order.

2. The date July 12, 1990 is derived from the cover letter to which plaintiff's complaint and a

Motion to Proceed In Forma Pauperis was attached. While plaintiff's Motion to Proceed In Forma Pauperis was filed on July 17, 1990, the complaint was not stamped as filed until August 16, 1990.

1990 the Chief Psychologist at S.C.I. Graterford, Dr. Lance Couturier, examined plaintiff. And on January 17, 1991 defendant conducted a personal examination of plaintiff. Both examinations state that plaintiff does not show present signs of suicidal ideation, assaultiveness or problem with impulse control. *See* Plaintiff's Ex. 4; Plaintiff's Ex. 14.

## II. *Discussion*

Plaintiff seeks two forms of injunctive relief: first, that defendant should enter into plaintiff's prison record a report disclaiming the false descriptions in the July 3 ACR; and second, that the July 3 ACR be expunged from the prison file. Complaint at ¶¶ D, E. I will address each of these in turn.

### A. *A Disclaimer*

█ From this court's view, plaintiff has already received the equivalent of a disclaimer. While his prison file does not contain a report or letter specifically deeming the statements in the July 3 ACR false, there are two psychological examinations of plaintiff completed since the challenged ACR, both calling into question its reliability. These examinations both disclose that the July 3 ACR was based on a review of plaintiff's records, not on a personal examination. Moreover, both observe that plaintiff is not currently exhibiting signs of the supposed areas of concern—assaultiveness, lack of impulse control, and suicidal ideation—listed in the July 3 ACR.

In his November 29, 1990 examination of plaintiff, Dr. Courturier reported:

[Mr. McCrery] is an intellectually gifted individual ... The depression and suicidal ideation which were described in Mr. McCreary's [sic] earlierreports [sic] did not appear in the present evaluation. No salient evidence of a thought or emotional disorder was noted. Nor does the inmate appear assaultive or display impulse control problems. Past ACRs of 1989 and 1990 which identified concerns in the area of suicide, impulse control and assaultive behavior were based on a review of prior records and reports.... [Mr. McCrery] does not appear to be suicidal or assaultive and appears to display adequate impulse control.

Plaintiff's Ex. 4. In addition, Dr. Courturier notes that "the inmate ... is presently suing his counselor." *Id.* In defendant's January 17, 1991 ACR of plaintiff—an evaluation signed by plaintiff—defendant indicated that plaintiff's "mental health," "assaultiveness," and "suicidal" ideation were still "Areas of Concern." Defendant's Ex. K. However, this time defendant qualified his statements. With respect to plaintiff's alleged "assaultiveness," defendant stated that this conclusion was "based on [plaintiff's] offense only." *Id.* Defendant further explained, "[s]ince [plaintiff's] reception, he has a clear conduct record. Staff has not reported any assaultive behavior. A recent psychological evaluation does not indicate any assaultive concerns." *Id.* As for plaintiff's "suicidal" tendencies, defendant made clear that the conclusion was "based on prior records," and that "[a] recent psychological evaluation does not list any suicidal concerns." *Id.* Plaintiff has not challenged the January 17 ACR either by presenting a grievance to prison officials or by filing suit.

While the newer examinations do not expressly disclaim the July 3 ACR, they do the equivalent. They discredit the ACR to the extent that they point out that the earlier report is neither based on a personal examination of plaintiff nor accurately reflective of plaintiff's current condition. Moreover, Dr. Courturier's reference to the present suit against plaintiff's counselor further advises the person reviewing plaintiff's files to question plaintiff's earlier evaluations. The newer examinations make it highly unlikely that the July 3 ACR will be relied upon in any significant way.

### B. *Expungement*

In certain limited circumstances, an inmate has the constitutional right, founded on the principles of due process, to have incorrect information expunged from his record. *See Paine v. Baker*, 595 F.2d 197, 201 (4th Cir.), *cert. denied*, 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979); *see also United States ex rel. Silverman v. Comm. of Penn.*, 527 F.Supp. 742, 745 (W.D.Pa.1981), *aff'd* 707 F.2d 1395 (3d Cir.1983). "Expungement is

ordinarily reserved for remedying the denial of an individual's constitutional rights." *Coles v. Levine*, 561 F.Supp. 146, 153 (D.Md. 1983) (citing *U.S. v. McLeod*, 385 F.2d 734, 750 (5th Cir.1967)), *aff'd* 725 F.2d 674 (4th Cir.1984). Under *Paine*—a case frequently looked to on the matter of expunging prison records[3]—expungement may be appropriate where plaintiff can show that the following three conditions exist:

> (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree.

*Paine*, 595 F.2d at 201. This three-part standard, the Fourth Circuit believed, "reflect[ed] a proper balancing of the inmates' need for some safeguard, the proper circumstances in which the safeguard may be invoked, and the potential burden on prison administrators." *Id.*

Defendant argues that plaintiff has failed under *Paine* to claim that his constitutional rights have been violated by the presence of the July 3 ACR in plaintiff's prison file. Accordingly, defendant contends that he is entitled to summary judgment on plaintiff's

§ 1983 claim. Under Fed.R.Civ.P. 56(c), a district court may enter summary judgment where the moving party has established that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

There is no dispute that plaintiff has satisfied the first *Paine* condition. Plaintiff alleges that the challenged ACR is in his prison file, and defendant appears to concede this. As for the second condition, plaintiff suggests in his legal memorandum that defendant has admitted that the information in the July 3 ACR is false. Although I do not interpret defendant's papers as making this concession, I will assume for purposes of argument that a genuine issue of material fact exists as to whether the statements made on the July 3 ACR are erroneous.[4] I make this assumption because I believe defendant's motion can be resolved on consideration of the third *Paine* condition: whether the information in plaintiff's file has been "relied on to a constitutionally significant degree."

■ On review, this court finds that plaintiff has failed to satisfy the third condition in

---

3. *See United States ex rel. Silverman*, 527 F.Supp. at 745 (applying *Paine*).

4. A review of the records used by defendant in making his July 3 assessment makes it difficult to conclude that defendant's report when made was erroneous. In virtually every record evaluation of plaintiff, there is some stated concern regarding plaintiff's suicidal notions. (1) On May 12, 1988 Dr. Sara Warren, staff psychiatrist at Norristown State Hospital, dictated a memorandum concerning plaintiff upon his discharge from the hospital. Although plaintiff suggests that Dr. Warren's memorandum supports his argument that his records do not show a suicidal ideation, Dr. Warren made the following comments: "He [McCrery] was transferred from Delaware County Prison because he was 'depressed and tearful.' The evaluating psychiatrist was concerned that he might try to kill himself;" "While McCrery made no attempt to harm himself or others while in the hospital, he certainly has indicated that he would prefer to die by a natural event rather than going on and attempting to adjust to events over which his controls may be extremely limited;" "Follow [McCrery] closely for suicidal behavior and increased despair." Plaintiff's Ex. 1. (2) On the August 5, 1988 document concerning plaintiff's August 8, 1988 transfer from the Delaware County Prison to Graterford, it states that plaintiff is "very suicidal." Plaintiff's Ex. 6. (3) On August 9, 1988, upon arrival at Graterford,

plaintiff underwent an Initial Psychiatric Session where it was noted that plaintiff attempted suicide on August 3, 1988. Plaintiff's Ex. 5. (4) On August 26, 1988 Dr. M. Sadar, Director of the Mental Health Unit at Graterford wrote of McCrery: "denies suicidal ideation. Does report if/when his appeals are denied he will again consider suicide." (Plaintiff's copy of Dr. Sadar's report only has the first sentence that plaintiff "denies suicidal ideation.") Defendant's Ex. C. (5) On October 24, 1988 a case review of plaintiff stated that he had a history of suicide ideation. Defendant's Ex. D. (6) Finally, on July 28, 1989 defendant completed an ACR of plaintiff in absentia and marked the same areas of concern as he did the next year in the July 3 ACR, including suicidal ideation. Defendant's Ex. F.

The only documents not referring to plaintiff's suicidal ideation are a November 14, 1988 case review and a psychological examination by G. Fleischer, Ph.D., completed at the behest of plaintiff to combat the effort of Delaware County to terminate his parental rights.

Given the abundant record evidence of plaintiff's suicidal tendencies, McCrery's July 3 ACR is not obviously erroneous. "[I]t is not sufficient that the information is true but prejudicial, or that the inmate disagrees with the evaluations or opinions of others." *United States ex rel. Silverman*, 527 F.Supp. at 745.

two respects. First, and most importantly, plaintiff has not claimed that the supposedly false information in his file has in fact been relied upon to any degree, let alone "to a constitutionally significant degree." Plaintiff's speculation that the false information will be used to his detriment at some future date is insufficient under *Paine* to trigger an inmate's entitlement to—and a prison administrator's obligation to direct—the expungement of the supposedly false information.

 ˙ Second, the ways in which plaintiff predicts the July 3 ACR will be relied upon, assuming it will be some day, are not constitutionally significant. Plaintiff suggests that the report could affect his eligibility for parole, commutation or pardon. *See* Plaintiff's Mem. in Opp. at 16. In addition, plaintiff contends in his complaint that the July 3 ACR will "preclude plaintiff from certain programs and considerations in the institution wherein he is confined." Complaint at ¶ 6.[5] Because plaintiff is an inmate, the inquiry into what interests are liberty interests entitled to due process protection is somewhat unusual since, where there is "a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). This is not to say that a validly convicted inmate loses all claim to due process protection. A state may confer by statute enforceable liber-

ty interests in the prison setting. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 461, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989) (citing *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (recognizing state-created liberty interest in parole); *Greenholtz v. Nebraska Penal Institution,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (same); *Wolff v. McDonnell,* 418 U.S. 539, 556–72, 94 S.Ct. 2963, 2974–82, 41 L.Ed.2d 935 (1974) (recognizing state-created liberty interest in good-time credits); *Vitek v. Jones,* 445 U.S. 480, 487–94, 100 S.Ct. 1254, 1260–64, 63 L.Ed.2d 552 (1980) (recognizing state-created liberty interest in freedom from involuntary transfer to mental hospital); *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983) (recognizing state-created liberty interest in freedom from more restrictive forms of confinement)). Specifically, "a State creates a protected liberty interest by placing substantive limitations on official discretion" such that the inmate may reasonably form an expectation of entitlement.[6] *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). *See also Thompson,* 490 U.S. at 462, 109 S.Ct. at 1909. I will address each of the interests plaintiff claims to be at stake to determine whether any is a liberty interest as that term has been defined by the Court.

 Plaintiff argues that under *Greenholtz,* in which Nebraska inmates were found

---

**5.** Plaintiff also states that the false information could be used to affect his relationship with his children. *See* Plaintiff's Mem. in Opp. at 16. It is true that a parent's relationship with his child can not be terminated without due process. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 753–54, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982). However, this court has no reason to believe that plaintiff's parental relationship with his children was indeed terminated. From plaintiff's exhibits, the court learns that in 1989 the Delaware County Children and Youth Services was trying to terminate plaintiff's parental rights and plaintiff requested a psychological examination to contest the county's effort. *See* Plaintiff's Exhibit 3. Plaintiff does not inform the court of the outcome of the county's effort.

If plaintiff's parental rights were not terminated, there would be no liberty interest at stake. Assuming though that the rights were terminated, there is no indication in plaintiff's pleadings or legal memoranda that the allegedly false information in the July 3 ACR was reviewed, yet alone relied upon, by the Delaware County Children

and Youth Services in reaching its decision. "The court's review of [a] claim [for violation of due process] is limited to 'the facts which constitute[d] significant factors'" in the decision affecting the liberty interest. *Murneigh v. Prisoner Review Bd.,* 1990 WL 114594, at *5 (N.D.Ill. 1990) (quoting *Solomon v. Elsea,* 676 F.2d 282, 289 (7th Cir.1982) (per curiam)). Without allegations that the July 3 ACR was significantly relied upon, plaintiff's claimed liberty interest fails the third prong of *Paine.*

**6.** In the absence of a state-created right, the Due Process Clause itself might still offer protection to an inmate where "consequences visited on the prisoner are qualitatively different from the punishment characteristically suffered by the person convicted of a crime." *Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980). Plaintiff's complaint does not suggest that his due process rights under the clause have been encroached upon.

to have a liberty interest in parole, he has a protected interest in parole. However, *Greenholtz* does not stand for the proposition that a general liberty interest exists in the right to release on parole. To the contrary, the Court states: "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 7, 99 S.Ct. at 2104. *See also Board of Pardons v. Allen*, 482 U.S. 369, 373, 107 S.Ct. 2415, 2418, 96 L.Ed.2d 303 (1987). The Court recognized that in some cases, though, states may construct a parole system that creates not just the possibility of parole, but rather the reasonable *expectation* of parole. In that situation, the prospect of release on parole is a liberty interest entitled to due process protection. In the Court's opinion, the Nebraska parole statute established an expectation of parole since the statute used mandatory language directing the grant of parole unless one of four disqualifying conditions was found by the board to exist. *Id.* 442 U.S. at 12, 99 S.Ct. at 2106.

By contrast, the Pennsylvania Probation and Parole Act, 61 Pa.Stat.Ann. § 331.21 cannot be said to create an expectation of parole. Most importantly, under 61 Pa.Stat.Ann. § 321, inmates sentenced to life imprisonment, such as plaintiff, are not even eligible for parole. Thus, plaintiff cannot seriously argue that he reasonably anticipates release on parole.

Still, plaintiff suggests that the law might change some day such that he might be considered for parole-release. Even if this occurred, plaintiff would have no reasonable expectation of parole. As compared to the Nebraska statute with its mandatory language, the Pennsylvania Probation and Parole Act gives the parole board broad discretion to:

release on parole any convict confined in any penal institution of this Commonwealth as to whom power to parole is herein granted to said board, except convicts condemned to death or serving life imprisonment, whenever in its opinion the best interests of the convict justify or require his being paroled and it does not

appear that the interests of the Commonwealth will be injured thereby.

Accordingly, Pennsylvania courts considering the issue in the wake of *Greenholtz* have concluded that the statute has not created a liberty interest in parole. *See, e.g. Counts v. Penn. Board of Probation and Parole,* 87 Pa.Cmwlth. 277, 487 A.2d 450, 453 (1985) (citing *Commonwealth of Penn. v. Brittingham,* 442 Pa. 241, 275 A.2d 83 (Pa.1971); *Blair v. Penn. Board of Probation and Parole,* 78 Pa.Cmwlth. 41, 467 A.2d 71 (1983), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984)).

■ Nor does plaintiff have a liberty interest in the possibility of a pardon or commutation. Like the decision to grant release on parole, the decision concerning pardon or commutation is not a purely fact-based calculation wherein an inmate could derive a sense of entitlement, but it is a discretionary and predictive determination. Noting this similarity of processes, the Supreme Court stated in *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981):

*Greenholtz* ... compels the conclusion that an inmate has "no constitutional or inherent right" to commutation of his sentence.... In terms of the due process clause, a ... felon's expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial than an inmate's expectation that he will be transferred to another prison; it is simply a unilateral hope.

452 U.S. at 464–65, 101 S.Ct. at 2464 (citing *Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2106). *See also Brooks–Bey v. Reid,* 1992 WL 121703 (E.D.Pa.), *aff'd* 983 F.2d 1049 (3d Cir.1992) (finding no liberty interest in modification of sentence through pardon or commutation).

■ Finally, there is also no liberty interest in obtaining certain work assignments or in participating in certain prison programs. According to the Fourth Circuit in *Paine:*

an allegation that false information was relied on to make ... a decision [regarding internal matters like work assignments] would not be constitutionally significant.

595 F.2d at 202. *See also Brooks–Bey,* 1992 WL 121703 (finding plaintiff's liberty interests not implicated because he was denied a "trust job" in the prison).

### C. *Failure to file a grievance*

Even if plaintiff had alleged the deprivation of certain liberty interests, this court would still be compelled to dismiss plaintiff's § 1983 claim. Defendant has argued that this court lacks jurisdiction to hear plaintiff's claim since plaintiff failed to file a grievance with defendant or the prison authorities. As support, defendant cites *Paine* in which the Fourth Circuit explained:

> as a jurisdictional predicate to filing an action under § 1983, the inmate must allege that the prison officials have deprived him of this right [to the expungement of erroneous information in prison files]. This means that the application for expunction must be made in the first instance to prison authorities.
>
> . This is not a requirement of exhaustion, but rather a requirement of jurisdiction. State prison authorities cannot be said to have denied an inmate's right to have erroneous information expunged from his file, unless they have been requested to do so and have refused.
>
> . . . . .
>
> An inmate who believes his file to contain false information should notify prison officials in writing, specifying what information he believes is false and what the true facts are.[7]

*Paine,* 595 F.2d at 202 (citations omitted). *Accord D. Haskins v. Lears,* 547 F.Supp. 869, 870–71 (D.Md.1982) (citing *Bukhari v. Hutto,* 487 F.Supp. 1162 (E.D.Va.1980)). *Cf. Farinaro v. Coughlin,* 642 F.Supp. 276, 282 (S.D.N.Y.1986) (making note of fact that inmate filed grievance with prison before filing § 1983 suit to expunge record). I am not persuaded that the plaintiff's failure to file a grievance acts as a *jurisdictional* bar to plaintiff's claim. Nonetheless, I consider plaintiff's failure to ask the prison authorities for an appropriate correction of his records

as relevant to the question of whether plaintiff has properly stated a claim under § 1983.

■ "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person action under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). Plaintiff alleges that the continued presence of the allegedly false July 3 ACR in his prison files violates his due process rights under the Fourteenth Amendment. However, as discussed above, an inmate does not have a generalized constitutional right to a prison file free of inaccurate information. The continued presence of false information in an inmate's records may be a constitutional violation in those limited circumstances in which the inmate has demonstrated that the erroneous information in an inmate's file has been relied upon to deprive an inmate of a constitutional right. *See Paine,* 595 F.2d at 201; *United States ex rel. Silverman,* 527 F.Supp. at 745. *See also Coles v. Levine,* 561 F.Supp. 146, 153 (D.Md. 1983) (citing *U.S. v. McLeod,* 385 F.2d 734, 750 (5th Cir.1967)), *aff'd* 725 F.2d 674 (4th Cir.1984). Notably, there are two constitutional rights at play here: the act of relying on false information to deprive an inmate of one constitutional right gives rise to a second constitutional right to have false information corrected. .

■ The right to have false information eliminated from a prison file is deprived in a manner actionable under § 1983 when a defendant refuses under color of state law to remove or make right the erroneous information. Necessarily, a party can not have refused to correct the inmate's files if he has not first been asked to do so. It is in this way that I agree with the court's holding in *Paine* that an inmate must ask the defendant(s) or prison authorities for the appropriate modification of his prison files before bringing a § 1983 claim.

---

**7.** While the *Paine* court requires that a written application be made to the prison authorities, this court can imagine circumstances where an

inmate has made his objections known to prison authorities through less formal means that should be recognized.

· ▆▆ In the present matter, defendant contends that plaintiff never presented his objections to the July 3 ACR to defendant or other prison officials. Defendant swears in his affidavit that plaintiff neither filed a formal grievance nor recommended to defendant that the July 3 ACR should be changed. Plaintiff does not dispute these assertions. Rather, plaintiff contends that he did not have to file his objections with prison officials. According to plaintiff, the prison policy restricting inmate access to prison records "unless production is pursuant to a court order" suggests that no extrajudicial path may be used. Plaintiff's Mem. in Opp. at 18 (quoting administrative directive BC–ADM 003, V, D, 1).

Plaintiff's argument is inapposite [8] for it ignores the basic problem with his complaint. Plaintiff has neither alleged that he made his objections concerning the July 3 ACR known to defendant, nor, more importantly, has plaintiff alleged that defendant refused to modify the supposedly erroneous ACR from plaintiff's file despite plaintiff's objections. Without these allegations, plaintiff's complaint fails to assert that defendant acted to deprive plaintiff of his constitutional right to have his file free of false information. Thus, plaintiff has failed to state a claim under § 1983.

### III. Conclusion

For the foregoing reasons, defendant's motion for summary judgment will be granted.

---

**8.** · Moreover, the reasoning of the argument collapses in light of the Criminal History Record Information Act, 18 Pa.Cons.Stat.Ann. §§ 9101 et seq. As this court noted in its August 19, 1992 Order, plaintiff cannot compel the production of his psychological examinations even through a court order since those documents are "[i]ntelligence information" and/or "treatment information" that may not be legally disseminated to anyone but a "criminal justice agency." 18 Pa. C.S.A. §§ 9106, 9121(c).